IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SUA INSURANCE COMPANY,     *

                                 *

       Plaintiff,             *

                                 *

vs.                             *     NO. 2010-388

                               *

CLASSIC HOME BUILDERS, LLC;     *

ROBERT WHITE and WANDA WHITE,     *

                               *

       Defendants.          *

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, SUA Insurance Company ("SUA"), by and through its undersigned counsel, and for its Complaint against Defendants, Classic Home Builders, LLC ("Classic"), Robert White and Wanda White, alleges, states and avers as follows:

### JURISDICTION AND VENUE

1.      Plaintiff SUA is an Illinois insurance company with its principal place of business located in Chicago, Illinois.

2.      Defendant Classic is an Alabama corporation with its principal place of business in Baldwin County, Alabama.

3.      Defendants Robert White and Wanda White are citizens of the State of Alabama and reside in Baldwin County, Alabama.

4.      The cost of defending Classic in the underlying lawsuit filed by Defendants Robert White and Wanda White, together with the amount of damages the Whites are seeking from Classic in connection with their Baldwin County property, exceeds $75,000.

5.    This Court has jurisdiction over this matter under 28 U.S.C. § 1332 based on diversity of citizenship between Plaintiff and Defendants and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6.    Venue is appropriate under 28 U.S.C. § 1391 because one or more defendants resides in the Southern District of Alabama, many of the acts – *i.e.*, the delivery of the insurance policy, the damages alleged in the underlying suit – which form the basis of this action occurred in the Southern District of Alabama, and the property at issue is located in the Southern District of Alabama.

## WHITE LAWSUIT

7.    On May 27, 2010, a lawsuit was filed in the Circuit Court of Baldwin County, Alabama, entitled *Robert and Wanda White v. Ace Home Center, Inc., et al.*, Case No. 05-CV-2010-900964.00 ("White Lawsuit"), against certain named and unnamed defendants, including Classic.  A true and correct copy of the Complaint in the White Lawsuit is attached hereto as **Exhibit A**.

8.    By reciting herein allegations from the Complaint in the White Lawsuit, SUA is not suggesting that said allegations have any merit.  The Complaint in the White Lawsuit includes the following allegations:

> a.   Defendant, CLASSIC HOME BUILDERS, LLC is a corporation organized and existing under the laws of the State of Alabama, doing business in Baldwin County, Alabama, Defendant CLASSIC HOME BUILDERS, LLC constructed the Plaintiffs' home and/or installed defective drywall in the Plaintiffs' home which has damaged other property of the Plaintiffs. Defendant CLASSIC HOME BUILDERS, LLC acts or omissions directly or indirectly through its agents, employees, or affiliates have caused the Plaintiff's to suffer damages.

> b.   Plaintiffs reside in and own a residence located at 15982 Pecan View Dr, Loxley, AL 36551.

c.   Plaintiffs' home was constructed by Defendant CLASSIC HOME BUILDERS, LLC and/or Fictitious Defendants P through Z using defective drywall manufactured, supplied, sold and/or otherwise placed in the stream of commerce by one or more of the Defendants.

d   On or about the Fall of 2006, the drywall was purchased and/or installed in Plaintiffs' home.

e.   Defendants improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, placed in the stream of commerce, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn concerning the drywall.

f.   The drywall was and is uniformly and inherently defective when used for its intended purposes.  The defective drywall emits a combination of sulfides which produce a distinctive chemical odor and causes corrosion to copper, silver and other metal materials such as those used in HVAC systems, eleetri.cal components and systems, gas fuel systems and appliances, electronics, equipment and other items commonly located in residential dwellings.

g.   Exposure to the drywall can result in irritated and itchy eyes and skin, difficulty breathing, sore throat, persistent cough, nausea, bloody noses, runny noses, recurrent headaches, fatigue, loss of appetite, impaired memory function, sinus infection, allergic reactions and asthma attacks. Prolonged exposure has also been implicated in reproductive health issues.

h.   The Defendants knew of the defective nature of the drywall at the time they improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, placed in the stream of commerce, sold, warranted, advertised, used, installed, applied, serviced and/or failed to warn concerning same. Alternatively, the Defendants should reasonably have known or discovered the defective nature of the drywall prior to its use and/or installation in the Plaintiffs' home.

i.   The Defendants suppressed, misrepresented, concealed, covered up and hid the defective nature of the drywall from the general public, including the Plaintiff's.

j.   The Plaintiffs' home has sustained substantial corrosion related damage due to the presence of the defective drywall, The Consumer Products Safety Commission (CPSC) has conclusively established that the Chinese drywall installed in the Plaintiffs' home contains elevated levels of elemental sulfur and strontium which emits high levels hydrogen sulfide, thus, causing rapid corrosion of metal in homes and other structures.

k.   As a direct and proximate consequence of the conduct, breaches, acts and omissions of the Defendants, Plaintiffs have incurred economic damages and are

entitled to recover monetary' damages for costs of inspection and remediation, as well as the costs and expenses necessary to replace or .repair their home; removal and replacement of all drywall contained in their home; replacement of other property (HVAC systems and refrigerators, microwaves, faucets, utensils, copper tubing and plumbing, electrical wiring, electronics and computers, personal property, furnishings, appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials damaged by the drywall.

l.   As a direct and proximate consequence of the conduct, breaches, acts and omissions the Defendants, Plaintiffs have incurred and/or will incur incidental and consequential damages for the costs of moving while their home is being repaired; loss of use of their home; the cost of renting comparable housing, the cost of repair or replacement of Plaintiffs' home; and the loss of use and enjoyment of the Plaintiffs' home

9.   Count I (Negligence/Gross Negligence) of the Complaint in the White Lawsuit includes the following allegations:

a.   Defendants negligently, willfully and/or recklessly breached their duty to Plaintiffs by formulating, inadequately testing, designing, manufacturing, storing, marketing, advertising, selling, using, applying, installing or otherwise placing into the stream of commerce drywall that is Unsafe, unsuitable and unfit for its intended purpose. Defendants did so with the understanding, appreciation and/or knowledge that it would ultimately he installed into the homes and structures of ordinary consumers like the Plaintiffs, Defendants further failed to warn the Plaintiffs of the defective nature of the drywall and the risks created by its presence in Plaintiffs' borne. Defendants further failed to promptly remove or recall the drywall from the marketplace or take other appropriate remedial action.

b.   Defendants knew or reasonably should have known that the drywall was defective, unreasonably dangerous, posed health risks, would cause other building components and other property to fail prematurely, was not 'suitable for its intended use in construction and. otherwise was not as warranted and represented by the Defendants.

c.   Defendants possessed superior knowledge about the composition and defective nature of the drywall, and also knew or reasonably should have known that the defects existed and would cause injury or damage to Plaintiffs and their home and other property; would require repair and/or replacement of damaged property; and would otherwise inflict significant damage on the Plaintiffs' home and other property.

d.   As a direct and proximate result of the Defendants' negligence and/or gross negligence, defective design and/or manufacture, sale, and/or use of the drywall, and the Defendants placement of same into the stream of commerce, Plaintiffs have suffered damage to property, and have incurred, or are substantially certain to incur,

the costs of testing, replacing the drywall and other damaged property, remediation of consequential and resulting property damage and other damages as alleged herein.

e.  Defendants' conduct also constituted gross negligence in that it was so willful, wanton, reckless, or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiffs.

10.  Count III (Unjust Enrichment) of the Complaint in the White Lawsuit includes the following allegations:

a.  Defendants, including Fictitious Defendants A through Z, have been unjustly enriched in that they have wrongfully acquired a benefit, i.e., funds and profits, by their wrongful behavior described herein.

b.  Defendants have continued to acquire funds and profits despite their knowledge of the defectiveness of; and risks posed by the drywall.

c.  The circumstances under which Defendants obtained profits to the detriment of the Plaintiff's make it inequitable for them to retain those funds and profits.

d.  Plaintiffs demand that Defendants be ordered to disgorge, for the benefit of the Plaintiffs, all or part of their ill-gotten profits derived from the defective drywall, and/or make full restitution to the Plaintiffs for the injuries or damages as set forth herein.

11.  Count IV (Implied Warranty of Fitness) of the Complaint in the White Lawsuit includes the following allegations:

a.  Under the law of Alabama, Defendants impliedly warranted directly to Plaintiffs or to their predecessors in title, that the drywall and/or the Plaintiffs' home constructed with the drywall was reasonably fit for the ordinary purposes for which they are ordinarily used.

c.  Plaintiffs are known, identified and/or intended third party beneficiaries, of the warranties given by. Defendants, and the clear and manifest intent of the Defendants' sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiffs.

d.  At the time of the Defendants actions and/or inactions complained of herein, Defendants know or had reason to know that the drywall was being acquired for the particular purpose of installation in the Plaintiffs' borne, and that the Plaintiffs were relying upon the Defendants superior skill., judgment and experience to select and furnish drywall suitable and fit for this particular purpose.

    e.   Defendants breached the implied warranty of fitness for a particular purpose by selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used.

    f.   The drywall supplied by and/or installed by Defendants is defective because it has caused damage to Plaintiffs and other property as alleged herein.

    g.   Defendants received actual notice of the defective drywall, but have failed to repair or replace the drywall, or otherwise take remedial measures.

12.    Count V (Implied Warranty of Merchantability) of the Complaint in the White Lawsuit includes the following allegations:

    a.   Under the law of Alabama, Defendants impliedly warranted directly to Plaintiffs that the drywall and/or. Plaintiffs' home constructed with the drywall was merchantable and reasonably fit for the ordinary purpose for which they are ordinarily used.

    b.   Plaintiffs are known, identified and/or intended third party beneficiaries of the warranties given by Defendants, and the clear and manifest intent of the Defendants.' sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the plaintiffs.

    c.   At the time of the Defendants actions and/or inactions complained of herein, Defendants knew or had reason to know that the drywall was being acquired for the particular purpose of installation in the Plaintiffs' home, and that the Plaintiffs were relying upon the Defendants superior skill, judgment and experience to select and furnish drywall suitably fit and merchantable for use in this Manner.

    d.   Defendants breached the implied warranty of merchantability by selling drywall that was defective and not reasonably fit for the ordinary purpose for which drywall is used.

    e.   The drywall supplied by and/or installed by Defendants is defective because it has caused damage to Plaintiffs and other property as alleged herein.

    f.   Defendants received actual notice of the defective drywall, but have failed to repair or replace the drywall or otherwise take remedial measures.

13.    Count VI (Express Warranty) of the Complaint in the White Lawsuit includes the following allegations:

    a.   Defendants, including Fictitious Defendants A through Z provided express warranties to the Plaintiffs.

    b.   Defendants, including Fictitious Defendants A through Z, also expressly affirmed that the product they were selling and/or installing in the Plaintiffs home was grade "A" gypsum drywall that meet the minimum requirements, standards and applicable building codes. By trade custom and practice, said warranty included an affirmation that the product was essentially gypsum, a paper hacking, and nothing else. That affirmation constitutes an express warranty under the laws of Alabama. Plaintiffs relied on said express warranties in accepting the subject drywall.

    c.   Defendants breached express warranties by selling and. or installing a product that did not conform to said affirmations, namely that the product was contaminated with a compound containing high sulfur and strontium content such that it is not essentially gypsum.

    d.   The drywall supplied and/or installed by Defendants is defective because it has caused damage to Plaintiffs and other property as alleged herein.

    e.   Defendants received actual notice of the defective drywall, but have failed to repair or replace the drywall or otherwise take remedial measures.

    14.   Count VII (Violation of Alabama's Deceptive and Unfair trade Practices Act) of the Complaint in the White Lawsuit includes the following allegations:

    a.   Defendants', including Fictitious Defendants A through Z's, actions and/or omissions as described herein violate the applicable Alabama Statues that were enacted to protect the consuming public from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

    b.   Defendants misrepresented and/or omitted material information regarding the drywall by failing to disclose known risks and by representing that the drywall was original or new and further selling or otherwise placing into the stream of commerce drywall that had been salvaged, damaged, deteriorated, reconditioned, reclaimed, used, or altered to the point of decreasing its value and/or rendering the drywall unfit for the ordinary purpose for which the drywall was purchased.

    c.   Defendants misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of the drywall in violation of applicable Alabama laws.

    d.   Defendants violated Alabama law by knowingly and falsely representing that Defendants' drywall was fit to be used for their intended purposes, and/or by intentionally failing to disclose the fact that the drywall was dangerous, ineffective,

unsafe and untested, salvaged, damaged, deteriorated, reconditioned, reclaimed, used, or altered to the point of decreasing its value or rendering the drywall unfit for the ordinary purpose for which the drywall was purchased.

e.  Defendants engaged in the deceptive acts and practices alleged herein in order to sell the drywall to the public, including Plaintiffs.

f.  Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to the applicable laws of the State of Alabama.

15.  Count VIII (Breach of Contract) of the Complaint in the White Lawsuit includes the following allegations:

a.  Defendants, including Fictitious Defendants A through Z, entered into an express and/or implied agreement with the Plaintiffs directly and/or with the Plaintiffs as intended third party beneficiaries to deliver, sell, convey, grant, install and/or otherwise provide drywall suitable for use, and/or constructed/manufactured within accepted construction standards, guidelines, applicable building codes and/or otherwise built in accordance with the contractual obligations undertaken.

b.  Defendants breached contractual obligations owed to the Plaintiffs by failing to deliver, sell, convey, grant, install and/or otherwise provide drywall suitable for use, and/or constructed/manufactured within accepted construction, standards, guidelines, applicable building codes and/or otherwise built in accordance with the contractual obligations undertaken.

16.  Count IX (Fraudulent Misrepresentation) of the Complaint in the White Lawsuit includes the following allegations:

a.  Defendants, including Fictitious Defendants A through Z, falsely and fraudulently represented to Plaintiffs and/or the consuming public in general that Defendants' drywall was new, grade "A" drywall that had been tested and was found to be safe and/or effective for use and Met the minimum standards of industry usage and applicable building codes.

b.  The representations made by Defendants were false, misleading and/or made with reckless disregard for the truth.

c.  When said representations were made by Defendants, Defendants knew these representations to be false and they willfully, wantonly, and/or with recklessly disregarded for the interests of the Plaintiffs made these representations.

d.  These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the public.

8

    e.   At the time the aforesaid representations were made by Defendants, Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

    f.   In reliance upon said representations, Plaintiffs' home was built with defective drywall causing Plaintiffs to suffer damages as alleged herein.

    g.   Defendants knew and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, did not meet the minimum standards of industry usage, was defectively manufactured, salvaged, deteriorated, reclaimed, or altered to the point of decreasing as value or rendering the drywall unfit for the ordinary purpose for which drywall is ordinarily used and/or lacked adequate and/or sufficient warnings.

17.    Count X (Fraudulent Concealment/Suppression) of the Complaint in the White Lawsuit includes the following allegations:

    a.   Defendants knew and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, did not meet the minimum standards of industry usage, was defectively manufactured, salvaged, deteriorated, reclaimed, or altered to the point of decreasing its value or rendering the drywall unfit for the ordinary purpose for which drywall is ordinarily used and/or lacked adequate and/or sufficient warnings.

    b.   Defendants fraudulently concealed, .and/or intentionally omitted the fact that the Chinese drywall had not been sufficiently tested, was defectively manufactured, salvaged, deteriorated reclaimed, or altered to the point of decreasing its value or rendering the drywall unfit for the ordinary purpose for which drywall is ordinarily used and/or lacked adequate and/or sufficient warnings.

    c.   Defendants were under a duty to disclose to Plaintiff's these material facts which the Defendants chose to suppress, conceal or hide from the Plaintiffs.

    d.   Defendants' concealment and omissions of material facts concerning the harmful and defective nature of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall, and did in fact so mislead the Plaintiffs into such reliance and continued use.

## THE SUA POLICIES

18.    SUA issued Policy No. 10AUIAG-000573-GL01 ("SUA Policy 1") to Classic Homebuilders, LLC in Baldwin County, Alabama.  SUA issued Policy Nos. 10AUIAIG-101764-

GL01 ("SUA Policy 2") and 10AUIAIG-103991-GL01 ("SUA Policy 3") to Classic Home

Builders in Baldwin County, Alabama.  A true and correct copy of all three SUA Policies is

attached hereto as Group **Exhibit B1-B3**.

19.     SUA Policy 1 was effective from April 7, 2006 through April 7, 2007.

20.     SUA Policy 2 was effective from May 17, 2007 through May 17, 2008.

21.     SUA Policy 3 was effective from May 17, 2008 through May 17, 2009.

22.     The limits of insurance for all three SUA Policies are $1,000,000 Each

Occurrence, $2,000,000 Products/Completed Operations and $2,000,000 General Aggregate.

SUA Policies 1 and 2 are subject to a $1,000 per claim deductible.

23.     SUA Policy 1 contains the following Insuring Agreement:

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to
pay as damages because of "bodily injury" or "property damage" to which
this insurance applies. We will have the right and duty to defend the
insured against any "suit" seeking those damages. However, we will have
no duty to defend the insured against any "suit" seeking damages for
"bodily injury" or "property damage" to which this insurance does not
apply. We may, at our discretion, investigate any "occurrence" and settle
any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in
Section III — Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the
applicable limit of insurance in the payment of judgments or
settlements under Coverages A or B or medical expenses under
coverage C.

No other obligation or liability to pay sums or perform acts or services is
covered unless explicitly provided for under Supplementary Payments —
Coverages A and B.

b.     This insurance applies to "bodily injury" and "property damage" only
if:

(1) The "bodily injury" or "property damage" is caused by an
"occurrence" that takes place in the "coverage territory";

> > > (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and
> >
> > > (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V — Extended Reporting Periods.
> >
> > c.    A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
> >
> > > (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or
> >
> > > (2) When we make settlement in accordance with Paragraph 1.a. above.
> >
> > All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.
> >
> > All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

24.    SUA Policies 2 and 3 contain the following Insuring Agreement:

> 1.    Insuring Agreement
>
> > a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
> >
> > b.    This insurance applies to "bodily injury" and "property damage" only if:
> >
> > > (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > > (2)    The "bodily injury" or "property damage" occurs during the policy period…

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury' or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

25.    SUA Policy 1 includes the following provision regarding Extended Reporting Periods:

### SECTION V — EXTENDED REPORTING PERIODS

1.    We will provide one or more Extended Reporting Periods, as described below, if:

a.    This Coverage Part is canceled or not renewed; or

b.    We renew or replace this Coverage Part with insurance that:
(1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2) Does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis.

2.   Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

   a.   "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations; or

   b.   "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

   Once in effect, Extended Reporting Periods may not be canceled.

3.   A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a.   Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph 2.a. of the Section IV — Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition;

   b.   Five years with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with Paragraph 2.a. of the Section IV — Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition; and

   c.   Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

   The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

26.   SUA Policies 1 and 2 contains the following Endorsement:

   EXCLUSION – INTENTIONAL INJURY

   ***

   2.   Exclusions

   This insurance does not apply to:

   a.   Intentional Injury

    i.   Expected or Intended Injury

        "Bodily injury" or "property damage" expected or intended from the standpoint of any insured.

27.    SUA Policies 1 and 2 include the following Endorsement:

TOTAL POLLUTION EXCLUSION
WITH A HOSTILE FIRE EXCEPTION

Exclusion f. under Paragraph 2., Exclusions of Section 1 — Coverage A — Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

    (a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

    (b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

28.     SUA Policy 3 contains the following exclusion:

     f.     Pollution

          (1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

               (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

29.     SUA Policy 2 contains the following endorsement:

CONTRACTORS SPECIAL CONDITION

The following is added to SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS:

Contractors

As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"

     (1) received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;
     (2) obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $1,000,000 per occurrence;
     (3) obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and
     (4) obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If coverage indicated under (2) and (3) above are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in (2) and (3) above.

The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph (2).

30. SUA Policies 1 and 2 contain the following Endorsement:

EXCLUSION - CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING

This insurance does not apply to:

Condominium, Apartment and Townhouse

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 5 units.

This exclusion does not apply if "your work" or "your product" occurs after the condominium, apartment or townhouse project has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

Tract Housing

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development."

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in this endorsement, the following is added to SECTION V - DEFINITIONS:

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction of five (5) or more residential buildings in any or all phases of the project or development.

31.    All three SUA Policies contain the following exclusions:

    j.    Damage to Property

    "Property damage" to:

    ***

    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    * * *

    Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

    k.    Damage To Your Product

    "Property damage" to "your product" arising out of it or any part of it.

    l.    Damage to Your Work

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

    The exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

    m.    Damage To Impaired Property Or Property Not Physically Injured

    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    n.    Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

32.    All three SUA policies contain the following definitions:

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15.    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.    "Products-completed operations hazard":

    a.       Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

           ***

        (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

           (a) When all of the work called for in your contract has been completed.

           (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site

           (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

           Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17.     "Property damage" means:

    a.       Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.       Loss of use of tangible property that is not physically injured.  Al such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21.     "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

          (a) You;

          (b) Others trading under your name;

\* \* \*

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

22.     "Your work":

a.     Means:

(1)     Work or operations performed by you or on your behalf; and

(2)     Materials, parts or equipment furnished in connection with such work or operations.

b.     Includes:

(1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2)     The providing of or failure to provide warnings or instructions.

### COUNT I - DECLARATORY JUDGMENT - NO "OCCURRENCE" OR "PROPERTY DAMAGE"

33.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

34.     The White Complaint includes Counts against Classic for breach of contract and breach of warranties resulting from its alleged faulty workmanship with respect to the purportedly defective drywall installed in the Whites' home.

35.     Claims for faulty workmanship, breach of contract and breach of warranty do not constitute an "occurrence" or "property damage" as those terms are defined in the SUA Policies.

36.     Consequently, there is no potential or actual coverage under the SUA Policies to the extent that Classic's liability in the White Lawsuit arises out of its alleged faulty workmanship, breach of contract or breach of warranty.

37.     SUA, therefore, has no duty to defend or indemnify Classic for the allegations against it in the White Lawsuit.

## COUNT II - DECLARATORY JUDGMENT - NO "BODILY INJURY" OR "PROPERTY DAMAGE" DURING ANY SUA POLICY PERIOD

38.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

39.     The SUA Policies apply only if "bodily injury" or "property damage" takes place during a policy period.  SUA Policy 1 was effective from April 7, 2006 through April 7, 2007. SUA Policy 2 was effective from May 17, 2007 through May 17, 2008.  SUA Policy 3 was effective from May 17, 2008 through May 17, 2009.

40.     There are no allegations in the Complaint in the White Lawsuit that Robert White or Wanda White experienced any "bodily injury."

41.     Nor are there any allegations of "property damage" in connection with the Whites' home during any of the SUA policy periods.

42.     The absence of any "bodily injury" or "property damage" during SUA's policy periods precludes any potential or actual coverage under the SUA Policies for Classic in connection with the White Lawsuit.  Pleading in the alternative, if there was any "bodily injury" or "property damage" during any of the SUA policy periods, coverage would exist only for such "bodily injury" or "property damage," and not for any "bodily injury" or "property damage" which did not take place within an SUA policy period.

43.     SUA, therefore, has no duty to defend or indemnify Classic for the allegations against it in the White Lawsuit, or in the alternative, any duty to indemnify is limited to "bodily injury" or "property damage" which took place within an SUA policy period.

## COUNT III - DECLARATORY JUDGMENT - EXCLUSIONS

44.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

45.     To the extent the Complaint in the White Lawsuit alleges "property damage" during an SUA policy period from an "occurrence" arising out of Classic's construction work, any or all of the following Exclusions in the SUA Policies operate to exclude coverage in whole or in part:

      a.     Exclusion j(6) - "Damage to Property";

      b.     Exclusion k – "Damage To Your Product";

      c.     Exclusion l - "Damage To Your Work";

      d.     Exclusion m – "Damage To Impaired Property Or Property Not Physically Injured"; and

      e.     Exclusion n – "Recall Of Products, Work Or Impaired Property"

46.     Any potential or actual coverage under the SUA Policies for Classic in connection with the White Lawsuit is excluded in whole or in part by one or more of these exclusions.

47.     SUA, therefore, has no duty to defend or indemnify Classic for the allegations against it in the White Lawsuit to the extent any of these exclusions apply.

## COUNT IV - DECLARATORY JUDGMENT - POLLUTION EXCLUSIONS

48.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

49.     The Complaint in the White Lawsuit alleges that "[t]he defective drywall emits a combination of sulfides which produce a distinctive chemical odor and causes corrosion."

50.     The "Total Pollution Exclusion" Endorsement in SUA Policies 1 and 2 and Exclusion (f) in SUA Policy 3 preclude any coverage for "bodily injury" or "property damage" caused by the release of "gaseous  . . . irritant or contaminant, including . . . vapor, . . . fumes, acids, alkalis, . . . ."

51.     The "Total Pollution Exclusion" Endorsement and Exclusion (f) apply to preclude coverage for "bodily injury" or "property damage" alleged in the White Lawsuit to have occurred as a result of the release of sulfide gasses.

52.     To the extent Classic's liability arises out of the release of sulfide gases, there is no potential or actual coverage under the SUA Policy for Classic in connection with the White Lawsuit.

53.     SUA, therefore, has no duty to defend or indemnify Classic for the allegations against it in the White Lawsuit.

## COUNT V - DECLARATORY JUDGMENT -
## NO "OCCURRENCE"/EXPECTED OR INTENDED INJURY/KNOWN LOSS

54.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

55.     The Complaint in the White Lawsuit alleges that the defendants knew about the defective nature of the subject drywall and the potential damage it could cause, but failed to provide a warning.

56.     The Complaint also alleges defendants' acted intentionally and recklessly, and intentionally concealed and made knowing misrepresentations with respect to the subject drywall and the potential injury and damage it could cause.

57.     Any damages resulting from Classic's intentional or reckless conduct are not damages caused by an "accident."

58.     The allegations of intentional or reckless conduct in the Complaint in the White Lawsuit do not constitute an "occurrence" as that term is defined in the SUA Policies.

59.     The "Expected or Intended" Exclusion in SUA Policies 1 and 2 excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

60.     The "Expected or Intended" Exclusion applies to exclude any potential or actual coverage in connection with the White Lawsuit to the extent that Classic's liability arises out of its intentional and/or reckless conduct.

61.     Additionally, there is no potential or actual coverage for Classic under the SUA Policies in connection with the White Lawsuit to the extent that any insured knew of any alleged "bodily injury" or "property damage" prior to the inception of any SUA Policy.

62.     SUA, therefore, has no duty to defend or indemnify Classic for the allegations against it in the White Lawsuit.

## COUNT VI - DECLARATORY JUDGMENT - EXCLUSION - CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING

63.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

64.     The Complaint in the White Lawsuit alleges that Classic "constructed the Plaintiffs' home and/or installed defective drywall in the Plaintiffs' home which has damaged other property of the Plaintiffs."

65.     The "Exclusion - Condominium, Apartment, Townhouse or Tract Housing" in SUA Policies 1 and 2 precludes any coverage for "bodily injury" and "property damage" in connection with the construction of condominiums, apartments, townhouses and tract housing involving five (5) or more units or buildings.

66.     To the extent that the home owned by Robert White and Wanda White is a "condominium, apartment, townhouse [or] tract housing" and was part of a project involving five (5) or more units or buildings, the "Exclusion - Condominium, Apartment, Townhouse or Tract Housing" in SUA Policies 1 and 2 applies to preclude any potential or actual coverage for Classic in connection with the White Lawsuit.

67.     Consequently, there is no potential or actual coverage under SUA Policies 1 and 2 for Classic in connection with the White Lawsuit.

68.     SUA, therefore, has no duty to defend or indemnify Classic under SUA Policies 1 and 2 for the allegations against it in the White Lawsuit.

## COUNT VII - DECLARATORY JUDGMENT - CONTRACTORS SPECIAL CONDITION

69.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

70.     Pursuant to the "Contractors Special Condition" Endorsement in SUA Policy 2, coverage for "bodily injury" or "property damage" resulting from the work of an independent contractor is contingent on Classic obtaining $1 million per occurrence additional insured coverage and workers compensation insurance from said independent contractor.

71.     To the extent Classic used an independent contractor with respect to the drywall at issue in the White Lawsuit, the "Contractors Special Condition" in SUA Policy 2 required Classic to obtain $1 million per occurrence additional insured coverage and workers compensation insurance from its independent contractor(s) as a condition to coverage.

72.     To the extent Classic failed to obtain $1 million per occurrence additional insured coverage and workers compensation insurance from any independent contractor it used in connection with the drywall at issue in the White Lawsuit, the "Contractors Special Condition"

in SUA Policy 2 applies to preclude any potential or actual coverage for Classic in connection with the White Lawsuit.

73.     Consequently, there is no potential or actual coverage for Classic under SUA Policy 2 in connection with the White Lawsuit.

74.     SUA, therefore, has no duty to defend or indemnify Classic under SUA Policy 2 for the allegations against it in the White Lawsuit.

<u>**COUNT VIII - DECLARATORY JUDGMENT -**</u>
<u>**CLAIMS MADE AND REPORTED UNDER SUA POLICY 1**</u>

75.     SUA incorporates by reference paragraphs 1-32 above as if fully stated herein.

76.     Coverage under SUA Policy 1 is contingent on an "occurrence" being reported to SUA within sixty (60) days of the expiration of SUA Policy 1.

77.     SUA Policy 1 was effective from April 7, 2006 through April 7, 2007.

78.     As Classic did not report an "occurrence" to SUA in connection with the claims asserted by Robert White and Wanda White in the White Lawsuit within sixty (60) days of April 7, 2007, there is no potential or actual coverage for Classic in connection with the White Lawsuit under SUA Policy 1.

79.     Consequently, there is no potential or actual coverage under SUA Policy 1 for Classic in connection with the White Lawsuit.

80.     SUA, therefore, has no duty to defend or indemnify Classic under SUA Policy 1 for the allegations against it in the White Lawsuit.

WHEREFORE, Plaintiff, SUA prays:

A.     That this Court determines and adjudicates the rights and liabilities of the parties hereto with respect to the SUA Policy.

B.      That this Court find and declare that the SUA Policies do not potentially or actually cover any portion of the claims against Classic in the White Lawsuit, or that any coverage is limited in accordance with the terms of the SUA policies as set forth herein.

C.      That this Court find and declare that SUA has no duty to defend or indemnify Classic in connection with the White Lawsuit and that such ruling is binding against Robert White and Wanda White.

D.      That this Court grants such other and further relief as it deems proper under the circumstances.


*/s Christina May Bolin*
CHRISTINA MAY BOLIN (MAYCH6582)
E-Mail:  CMB@AlfordClausen.com
Attorneys for Plaintiff

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)


PLEASE SERVE DEFENDANTS AS FOLLOWS:

Classic Home Builders, LLC                    (Via Certified Mail)
c/o Gary D. Skipper, Registered Agent
15947 Highway 59 South
Foley, AL  36535

Mr. Robert White                              (Via Certified Mail)
15982 Pecan View Drive
Loxley, AL  36551

Ms. Wanda White                               (Via Certified Mail)
15982 Pecan View Drive
Loxley, AL  36551