## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SUA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **PUBLISH** |
| | ) | |
| v. | ) | CIVIL ACTION 10-0388-WS-C |
| | ) | |
| CLASSIC HOME BUILDERS, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the defendants' motions to dismiss. (Docs. 11, 17). The parties have filed briefs in support of their respective positions, (Docs. 12, 24, 25), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions are due to be granted.

## BACKGROUND

According to the complaint, the individual defendants herein ("the Whites") filed suit ("the Suit") in state court against various defendants, including Classic Home Builders, LLC ("Classic"). The state complaint alleges that Classic constructed the Whites' home using defective drywall, resulting in various damages. The plaintiff ("SUA") insured Classic and now seeks a declaration that it owes Classic no defense or indemnity obligation arising out of the Suit.

The federal complaint bases subject matter jurisdiction on diversity of citizenship. The complaint, as amended, satisfactorily establishes that the parties are of diverse

citizenship, but the defendants argue that SUA has not established that the amount in controversy exceeds $75,000.[1]

## DISCUSSION

The state complaint alleges that Classic incorporated defective Chinese drywall into the house purchased by the Whites, which emits hydrogen sulfides that cause physical problems and corrode metal materials in the house. The state complaint alleges that Classic and the other defendants knew of the drywall's defective nature but misrepresented it to, and/or suppressed it from, the Whites. Classic is a defendant as to all ten asserted causes of action: (1) negligence; (2) AEMLD; (3) unjust enrichment; (4) implied warranty of fitness for a particular purpose; (5) implied warranty of merchantability; (6) express warranty; (7) deceptive and unfair trade practices; (8) breach of contract; (9) fraudulent misrepresentation; and (10) fraudulent concealment.

The state complaint does not demand a specific amount of damages. It lists the elements of recovery demanded as follows:

- Cost of inspection, testing and remediation
- Cost of removal and replacement of all drywall in the home
- Cost of replacement of other damaged property
- Cost of moving out of the house
- Cost of renting comparable housing
- Loss of use and enjoyment of the house
- "Compensatory damages"
- Punitive damages

---

[1] The Court, reviewing its subject matter jurisdiction sua sponte as it is required to do, ordered the plaintiff to clarify the citizenship of Classic. The first and second amended complaints were permitted only for that limited purpose, and the plaintiff has not suggested that it has altered the allegations of the original complaint as they relate to the amount in controversy. Thus, and because the parties' briefs address the original complaint, the Court does so as well.

- Disgorgement of profits and/or restitution
- Attorney's fees and litigation costs
- Pre-judgment and post-judgment interest

(Doc. 1, Exhibit A at 21-22).

**I. Standard for Evaluating the Amount in Controversy.**

SUA and the defendants lobby for widely divergent standards for determining the amount in controversy in this declaratory judgment action. The Court rejects both.

**A. Legal Certainty.**

The federal complaint alleges that, based on the damages sought in the state complaint, plus SUA's cost of defending Classic in the Suit, the amount in controversy exceeds $75,000. (Doc. 1 at 1-2). SUA argues that this allegation was made in good faith, that the allegation therefore "must be taken as true," and that the defendants thus must show to a "legal certainty" that SUA's claim is really for less than $75,000. (Doc. 24 at 11, 13). For this proposition SUA invokes *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

The "legal certainty" test, however, does not apply here. "[W]here jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *Tapscott v. MS Dealer Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated in part on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000) (en banc)). A prayer for damages is indeterminate when it "'does not allege a specific amount of damages.'" *Id*. at 808 (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

This preponderance-of-the-evidence standard applies to declaratory judgment actions brought in federal court by an insurer. *McKinnon Motors*, 329 F.3d at 807 & n.1. This makes sense, given that a declaratory judgment plaintiff does not seek damages at all and thus does not seek a determinate amount of damages. In such cases, a complaint's raw allegation that the amount in controversy exceeds the jurisdictional threshold does not trigger the "legal certainty" standard. In *Greenberg*, for example, the insurer filed a federal declaratory judgment action and alleged generally that the amount in controversy exceeded the jurisdictional amount. Despite this allegation, the Fifth Circuit rejected use of the "legal certainty" test and required the plaintiff to demonstrate by a preponderance of the evidence that the amount in controversy exceeded the jurisdictional threshold. 134 F.3d at 1253.

Because the federal complaint seeks declaratory relief, *Red Cab* does not apply, and SUA must establish the existence of subject matter jurisdiction. SUA appears to grasp this, since it elsewhere acknowledges that it has the "burden of establishing that the amount in controversy more likely than not exceeds $75,000." (Doc. 24 at 13; *accord id*. at 8).

### B. Unambiguous Proof.

*McKinnon Motors* borrowed its preponderance-of-the-evidence standard from the removal context. 329 F.3d at 807 & n.1 (citing *Tapscott*). The defendants view *McKinnon Motors* as inviting additional borrowing, and they suggest the Court should import another principle from the removal context by placing on SUA the burden of producing a document that "unambiguously establishes" that more than $75,000 is in controversy. (Doc. 12 at 4-5).

According to *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), the removing defendant must "unambiguously establish federal jurisdiction," and "documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." 483 F.3d at 1213 & n.63; *accord id*. at 1218.

[4]

The Court, however, is not persuaded that this portion of *Lowery* should be extrapolated to the declaratory judgment context.

As a threshold matter, the Court does not read *McKinnon Motors* as encouraging the reflexive utilization in the declaratory judgment context of principles developed in the removal context. The Eleventh Circuit adopted the preponderance-of-the-evidence standard from *Tapscott* only because it found the two contexts "analogous in this setting." 329 F.3d at 807 n.1. Thus, importation of the *Lowery* rule is appropriate only if the setting in which the *Lowery* rule developed is analogous to that involved in declaratory judgment actions.

*Lowery* involved removal under the second paragraph of 28 U.S.C. § 1446(b), which addresses removal of cases that were not initially removable. Removal under that paragraph is triggered by the defendant's "receipt … of a … paper from which it may first be ascertained that the case is one which is or has become removable." The paragraph provides the defendant 30 days following receipt of such a paper in which to remove.

The appellate cases on which *Lowery* relied for its "unambiguously establish" test, 483 F.3d at 1213 n.63, focused on these statutory requirements. First, the word "ascertained" denotes "a greater degree of certainty or that the facts supporting removability be stated unequivocally." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). Second, because the consequence of not removing promptly after receiving a triggering paper is loss of the right to remove, "the notice ought to be unequivocal and should not be one which may have a double design." *Id*. (internal quotes omitted); *accord Huffman v. Saul Holdings Limited Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999).

The concerns that prompted development of the "unambiguously establish" standard do not exist in the declaratory judgment context. No statutory language suggests that a heightened degree of certainty is necessary or even appropriate for an action originally filed in federal court. Nor does the plaintiff risk losing its right to seek a

[5]

federal forum if it fails to immediately recognize that a federal forum is available. Second-paragraph removals and declaratory judgment actions thus are not "analogous in this setting," and the *Lowery* rule should not be imported to the latter context.

The Eleventh Circuit has held that *Lowery* is dicta outside the context of second-paragraph removals. *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 747, 762, 764 (11th Cir. 2010). It has also held that *Lowery*'s dicta that a first-paragraph removal must be based on a document received from the plaintiff is not persuasive and will not be followed. *Id*. at 762-63. This discussion addressed as well *Lowery*'s "unambiguously establish" standard, noting that *Lowery* relied on statutory language that appears only in the second paragraph of Section 1446(b) and noting also that both *Bosky* and *Huffman* are limited to the second-paragraph removal context. *Id*. *Pretka* does not dictate the Court's resolution of the place of *Lowery*'s "unambiguously establish" standard in the declaratory judgment context, but it is consistent with it.

There is a second, more basic reason the Court will not require SUA to unambiguously establish the amount in controversy. As noted, the Eleventh Circuit in *McKinnon Motors* established a preponderance-of-the-evidence standard for establishing the amount in controversy in declaratory judgment actions. The higher, "unambiguously establish" standard articulated by *Lowery* is fundamentally at odds with the *McKinnon Motors* standard, and the Court cannot ignore the controlling precedent of *McKinnon Motors* by employing a different standard than the one it imposes.

Something is unambiguous when it is susceptible of but one reasonable interpretation or meaning. *See, e.g., Georgia Association of Retarded Citizens v. McDaniel*, 855 F.2d 805, 809 (11th Cir. 1988) ("'pending' is simply not a term of art that unambiguously carries with it [any one] meaning") (internal quotes omitted); *cf. Royal Insurance Co. of America v. Whitaker Contracting Corp*., 242 F.3d 1035, 1042 n.9 (11th Cir. 2001) (under Alabama law, "unambiguous contract language clearly states one reasonable meaning"). Thus, *Lowery* effectively requires that a second-paragraph

removal be based on a document that cannot reasonably be construed other than as reflecting that more than $75,000 is in controversy.

*Lowery* expressly equates "unambiguous" with "unequivocal." 484 F.3d at 1213 n.63. Mr. Black does likewise. Black's Law Dictionary 1667 (9th ed. 2009). "Clear and convincing" is a higher standard of proof than "preponderance of the evidence," *United States v. Owens*, 854 F.2d 432, 436 n.8 (11th Cir. 1988), yet even "'clear and convincing' does not mean 'unequivocal.'" *Id*. *Lowery*'s "unambiguously establish" standard necessarily is more exacting than a preponderance of the evidence standard, and both of them cannot simultaneously apply. Because *McKinnon Motors* has already established that the latter standard governs, it cannot be supplanted by the former.[2]

The defendants protest that this Court has already applied *Lowery*'s "unambiguously establish" requirement in an original declaratory judgment action. (Doc. 25 at 12). In *Metropolitan Group Property and Casualty Insurance Co. v. Thompson*, 2009 WL 4456342 (S.D. Ala. 2009), the insurer filed a declaratory judgment action after its insured sued it in state court for under $75,000. The insurer conceded it could not remove the state action but argued it could nevertheless sustain its own action because the insured might someday ask for more damages and because she had refused to stipulate that her claims did not exceed $75,000. The Court noted that binding precedent clearly foreclosed these arguments, leaving the insurer with nothing but a state complaint that on its face negated federal jurisdiction. The Court's concluding statement that the insurer was required to produce a document unambiguously establishing federal jurisdiction, *id*.

---

[2] This raises interesting questions concerning the viability of the "unambiguously establish" test even in the removal context. The preponderance-of-the-evidence standard has been adopted for both first-paragraph removals and second-paragraph removals. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 971, 972 (11th Cir. 2002) (first-paragraph removal); *Tapscott*, 77 F.3d at 1355 (apparently a second-paragraph removal, since removal was based on the second amended complaint). Under the Circuit's "prior panel precedent" rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010).

at *3, was thus dicta, since the insurer could not have satisfied the *Tapscott* standard, either. Moreover, *Thompson* was decided before *Pretka* made clear that *Lowery* constitutes holding only with respect to second-paragraph removals. Nothing in *Thompson* compels the Court to follow it here.[3]

In sum, the Court rejects the defendants' effort to force SUA to unambiguously establish that the amount in controversy exceeds $75,000. Instead, SUA need only show, by a preponderance of the evidence, that this amount is in dispute.

## II. Evaluation of the Amount in Controversy.

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *McKinnon Motors*, 329 F.3d at 807 (internal quotes omitted). "In other words, the value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted." *Cohen*, 204 F.3d at 1077.

The federal complaint seeks a declaration that SUA has no duty to defend or indemnify Classic in connection with the Suit. (Doc. 1 at 27). "[I]n declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim - not the face amount of the policy." *E.g., Hartford Insurance Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (internal quotes omitted); *accord Farmers Insurance Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979); *Toler v. State*

---

[3] The defendants additionally cite *State Farm Fire & Casualty Insurance Co. v. Knoblett*, 561 F. Supp. 2d 1256 (N.D. Ala. 2008). While *Knoblett*'s invocation of *Lowery*'s "unambiguously establish" language in an original declaratory judgment action context may not have been dicta, it did not seek to harmonize that test with the preponderance-of-the evidence standard. *Knoblett*, like *Thompson*, preceded *Pretka*'s limiting gloss and is similarly unpersuasive.

*Farm Mutual Automobile Insurance Co.*, 25 Fed. Appx. 141, 144 (4th Cir. 2001). This Court has so held on multiple occasions,[4] and the parties do not appear to disagree.

The defendants, however, take the position that this formulation precludes the Court from considering the cost to SUA of defending Classic in the Suit. (Doc. 25 at 3-4). They do not explain how being relieved of any obligation to defend Classic could fail to be a "benefit that would flow to [SUA] if the [declaratory relief] were granted." Neither the Court's previous opinions nor the others cited by the defendants have stated that costs of defense are irrelevant in determining the amount that an insurance declaratory judgment action places in controversy.[5] On the contrary, under binding precedent "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount …." *Stonewall Insurance Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976).[6]

The defendants appear to assert that, to carry its burden, SUA must rely only on documents generated by the Whites as the underlying plaintiffs. (Doc. 12 at 4). This argument is based on the same language from *Lowery* discussed in Part I.B. *Lowery*'s requirement of a document received from the plaintiff stems from the statutory language

---

[4] *White-Spunner Construction, Inc. v. Zurich American Insurance Co.*, 2010 WL 3489956 at *2 (S.D. Ala. 2010); *Thompson*, 2009 WL 4456342 at *2.

[5] *See White-Spunner*, 2010 WL 3489956 at *3 (underlying claim for wrongful death placed more than $75,000 in controversy, independent of defense costs); *Thompson*, 2009 WL 4456342 at *1 (insurer sought only a declaration that the insured was not entitled to underinsured motorist benefits, not a declaration as to duty to defend).

[6] SUA cited *Lopez*, but the defendants insist that it "has no bearing to [sic] this case because this case is pending in the Eleventh Circuit, not the Fifth Circuit." (Doc. 25 at 4). This argument comes 29 years too late. "We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

of the second paragraph of Section 1446(b), which provides that removal is triggered by the receipt of "an amended pleading, motion, order or other paper." *Lowery*, 483 F.3d at 1212-13. No similar statutory requirement obtains for original declaratory judgment actions, so that context and the second-paragraph removal context are not "analogous in this setting" under *McKinnon Motors*. It would thus be improper to apply *Lowery*'s restrictive requirement in the declaratory judgment context.

*Pretka* fully supports this conclusion. There, the Eleventh Circuit refused to extend this portion of *Lowery* to the first-paragraph removal context, noting that the requirement is based on the "other paper" language found in the second paragraph but not the first. 608 F.3d at 762-63. Thus, "that first paragraph does not restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal." *Id*. at 770-71. It is first-paragraph removal, not second-paragraph removal, that is analogous in this setting to declaratory judgment actions, and the *Pretka* formulation rather than the *Lowery* formulation governs the types of evidence on which SUA may rely.

"Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe*, 613 F.3d at 1061-62 (internal quotes omitted). Moreover, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id*. at 1062; *accord id*. at 1064. On the other hand, reliance on "speculation" is "impermissible." *Pretka*, 608 F.3d at 771.

"[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott*, 77 F.3d at 1357; *accord Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11[th] Cir. 2010). "Under *Tapscott*, the defendant must show that, if the plaintiffs prevail on liability, they will more likely than not be awarded over

$75,000." *McCollough Enterprises, LLC v. Marvin Windows & Doors*, 2009 WL 2216599 at *1 (S.D. Ala. 2009) (citing cases).

In general, to satisfy the jurisdictional amount a plaintiff's claims against a defendant may be aggregated. *Snyder v. Harris*, 394 U.S. 332, 335 (1969). However, "if these claims are alternative bases of recovery for the same harm under state law, [the plaintiff] could not be awarded damages for both, and a court should not aggregate the claims to arrive at the amount in controversy." *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3rd Cir. 1997); *accord D.M.C. Enterprises, Inc. v. Best McAllister*, LLC, 2010 WL 3039477 at *2 (S.D. Ala. 2010); *Petroleum Traders Corp. v. Hillsborough County*, 2008 WL 4570318 at *4 n.9 (M.D. Fla. 2008).

When state law precludes the recovery of a form of damages demanded by the plaintiff, that form of damages may not be considered in determining whether the jurisdictional threshold is met. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299-1300 (11th Cir. 1999) (punitive damages); *accord Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, [citations omitted], unless it is apparent to a legal certainty that such cannot be recovered.").

With these preliminaries concluded, the Court turns to SUA's effort to meet its burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $75,000.

SUA first argues that the state complaint demands that Classic "replace or repair Plaintiffs' home." (Doc. 1, Exhibit A at 21). SUA produces a HUD-1 settlement statement reflecting that the "contract sales price" from Classic to the Whites was $146,600. (Doc. 24, Exhibit A at 1). According to SUA, this shows that, if the Whites are successful in the Suit, they are likely to be awarded at least $146,600 to replace their home. (Doc. 24 at 11). The problem is that the Whites do not demand that their home be literally replaced from the foundation up. As the full ad damnum clause – of which the

quoted phrase is but a small fraction – makes clear, what they seek is replacement of the defective drywall and repair or replacement of specific components that have been damaged by escaping hydrogen sulfides. (*Id.*). Whatever the scope of the problem, the Whites demand far less than full replacement of the entire house, and SUA cannot establish jurisdiction based on a measure of damages the Whites do not seek.

Even were the misleading snippet on which SUA relies to be read in isolation as SUA desires, it does not demand replacement of the house but replacement *or repair* of the house. The Court cannot in a vacuum assume that replacement of the entire house (had that truly been demanded) is more likely than the alternative requested relief of repair of the impacted components of the house. SUA offers no basis on which the Court could conclude that, if the Whites are successful, they are more likely to be awarded the cost to fully replace their house than the cost to repair or replace discrete components of the house. Thus, only the latter measure of damages is potentially in play.

SUA thus predictably turns to an argument that the cost to repair or replace discrete components of the house – which the state complaint lists – is likely to run more than $75,000. Its only evidence is again the $146,600 purchase price, but SUA insists that "common sense dictates" that these costs will exceed $75,000. (Doc. 24 at 9-10, 11-12). SUA never actually articulates how common sense carries the day here, but the Court assumes that SUA believes the sheer number of potentially affected items listed in the state complaint makes evident the probability of a $75,000 bill to make it right.

The list is impressive. In addition to all drywall in the house, the ad damnum clause mentions replacement of "HVAC systems, refrigerators, microwaves, faucets, utensils, copper tubing and plumbing, electrical wiring and components, electronics and computers, personal property, furnishings, appliances, and other metal surfaces and household items." (Doc. 1, Exhibit A at 21). The problem is that SUA offers no basis for concluding that there is so much of these components at issue, and that their replacement cost is so great, that the expense of doing so is likely to exceed $75,000.

SUA relies on the HUD-1, but that evidence actually weighs against its position. The Whites bought the house for only $146,600, so SUA is asking the Court to accept that the cost of replacing the affected components will probably amount to over 50% of the purchase price. Since that price presumably included the value of the raw land and a profit margin for Classic, the percentage is likely 60% or more of the entire cost to build the house from the ground up – even though that cost necessarily included many expensive items that are not alleged to be affected by the hydrogen sulfides or in need of replacement. This list would include such major expenses as lot clearing, foundation work, framing, insulation, roofing, cladding, floors, doors, windows, cabinets, drawers, counters, fireplace, porch or deck, driveway, and landscaping. That is, even though the affected components probably represent a relatively small fraction of the cost of building the house, SUA invites the Court to assume that replacing them will cost many times more than they did originally. What SUA invokes is not common sense but very nearly its exact opposite. While replacing the affected components obviously will cost something, SUA provides only impermissible speculation that the cost will be even a sizable fraction of $75,000.[7]

SUA points out that the Whites also seek damages for the costs of inspecting and testing the house; moving out of the house; and renting comparable housing. (Doc. 24 at 12). The problem is the same: SUA offers no evidence of what the amount of these damages is likely to be, and the Court cannot intuit them. These elements of damage presumably have some monetary value, but without evidence the Court cannot reasonably assign an estimated value to them. There is certainly no principled basis for concluding

---

[7] The Court recognizes that the list of affected items includes personalty (such as computer, electronics and utensils) that may not have been provided by Classic. This does not appreciably aid SUA, because it has provided nothing to show the quantity of such items, their value, or their probable replacement cost, and the Court is not free to speculate as to such matters. There is, for example, a huge difference between replacing a new, top-line, 25-cubic foot refrigerator and a 15-year-old, worn-out, 16-cubic foot model, yet SUA offers no means of predicting which is at issue.

that these costs are likely to represent a significant percentage of the jurisdictional threshold.

SUA next notes without comment that the Whites seek "compensatory damages." (Doc. 24 at 12). The state complaint does not allege that the Whites experienced either physical symptoms or emotional distress. Especially in view of SUA's failure to address the demand for compensatory damages, the Court cannot assume that it represents anything other than an alternative terminology for the same damages discussed above. As a redundant form of recovery, it cannot be considered in assessing the amount in controversy. Even were the term to be considered as encompassing physical injury and/or emotional distress, SUA has provided no basis for assigning a probable range of recovery.

SUA likewise notes without comment that the state complaint seeks an award for loss of use. (Doc. 24 at 12). Simply pointing out that the complaint demands such damages does nothing to show that the Whites are likely to be awarded any significant sum concerning them.

The state complaint also alleges that Classic knew the drywall was defective and made misrepresentations concerning its quality, and it demands an award of punitive damages. SUA argues that these allegations make it more likely than not that more than $75,000 is in controversy. (Doc. 24 at 12-13). For this proposition SUA relies on *Roe*, but that case was one for wrongful death, and the wanton taking of human life necessarily implicates substantial punitive damages under Alabama law. 613 F.3d at 1065-66; *see also Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1374 (S.D. Ala. 2009) (an Alabama wrongful death claim alleging the wanton destruction of a human life makes it readily deducible from the complaint that over $75,000 is in controversy). The Court is not free simply to assume, as SUA does, that the Whites are likely to be awarded substantial punitive damages against Classic.

Moreover, SUA's policies expressly and clearly exclude punitive damages from coverage. (Doc. 1, Exhibit B-1 at 63; *id.*, Exhibit B-2 at 49; *id.*, Exhibit B-3 at 42).[8] SUA has not explained how it would gain any "monetary value" from a declaration of the obvious and undeniable – that its policies do not cover what they patently do not cover and cannot possibly be construed to cover. The Eleventh Circuit precludes courts from considering punitive damages when it "appears to a legal certainty that such cannot be recovered." *Holley Equipment*, 821 F.2d at 1535. Without argument or authority to the contrary, which SUA does not provide, the Court must conclude that its reliance on punitive damages is captured by this rule.

SUA also lists, then ignores, the state complaint's demand for equitable relief from Classic in the form of disgorging its profit on the installation of the drywall and/or restitution. (Doc. 24 at 12). The complaint demands "restitution to the Plaintiffs for the injuries or damages as set forth herein." (Doc. 1, Exhibit A at 13). Restitution is therefore redundant with the complaint's claimed legal damages and thus cannot be awarded in addition to those damages. It is but an alternative measure of recovery for the same wrong and so is immaterial to the amount in controversy.

A disgorging of profit is likely redundant as well, since it mimics the effect of punitive damages. In any event, there is nothing in this record that would support the proposition that Classic registered any significant profit from installing the drywall.

Similarly, SUA cites without comment the state complaint's demand for costs, pre-judgment interest and post-judgment interest. (Doc. 24 at 12). These items are irrelevant as a matter of law to the amount in controversy. 28 U.S.C. § 1332(a) (the amount in controversy must exceed $75,000 "exclusive of interest and costs").

---

[8] "This insurance does not apply to: Punitive or Exemplary Damage …. Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages, with the exception of wrongful death causes covered under Alabama's Wrongful Death Statute." (*Id.*).

The final recovery sought by the state complaint is attorney's fees. Once again, SUA notes this fact without discussion, (Doc. 24 at 12), and that silence alone is sufficient to require ignoring the demand in deciding if SUA has met its burden. Nor would the result change if the Court were to address the request for fees on SUA's behalf.

"The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *McKinnon Motors*, 329 F.3d at 808 n.4. One of the Whites' claims is under the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 et seq. (Doc. 1, Exhibit A at 17-18). A successful claimant under that statute may be awarded a reasonable attorney's fee. Ala. Code § 8-19-10(a)(3). Thus, attorney's fees are potentially in play. Once again, however, SUA has provided the Court no basis for concluding that the Whites are likely to be awarded a significant sum as statutory attorney's fees even if they prevail against Classic on this claim. On this silent record, any figure would be only a wild guess.[9]

Finally, SUA reminds the Court that it seeks a declaration that it owes Classic no defense. (Doc. 24 at 13). As discussed above, defense costs are a proper component of the amount in controversy in an insurer's declaratory judgment action. Yet again, however, SUA has submitted no evidence to show how much those defense costs are likely to be; indeed, SUA has not even posited an estimated amount. Instead, it again asks the Court merely to assume on faith that they will be substantial. This is precisely what the Court may not do.

"A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001). Likewise, a declaratory judgment plaintiff such as SUA cannot

---

[9] In particular, SUA has provided evidence neither as to how much in fees the Whites' counsel are likely to charge nor how much of those fees likely would be awarded, given considerations of the reasonableness of the hours, the reasonableness of the rate charged, and the limited number of hours devoted to the single count allowing for an award of fees.

show jurisdiction by a preponderance of the evidence simply by saying that over $75,000 is in dispute.

SUA relies primarily on the state complaint's listing of damages to meet its burden. For reasons discussed above, however, a sufficiently high amount in controversy is not apparent from the face of the complaint. *Cf. Williams,* 269 F.3d at 1318, 1320 (allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer these damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000).

SUA insists that parties invoking federal jurisdiction are entitled to "'introduce their own affidavits, declarations, or other documentation.'" (Doc. 24 at 9 (quoting *Pretka*, 608 F.3d at 755)). And so they are, but SUA elected to submit no affidavits or declarations concerning the probable amount of the Whites' losses, their attorney's fees, or SUA's costs of defense. The only documents they did offer – the HUD-1 and the policies – did not assist SUA but rather excluded punitive damages from consideration and demonstrated the improbability of a substantial award of hard damages.

At bottom, SUA relies on a visceral impression that, since the state complaint includes a lengthy ad damnum clause, the amount in controversy must exceed $75,000. This approach may have superficial appeal, but the jurisdictional inquiry is much more searching. It remains possible in this case, as in most, that the successful plaintiffs will be awarded more than $75,000. Possibility, however, is not probability and will not support federal jurisdiction. Whether or not SUA could have adequately supported its invocation of diversity jurisdiction, on this record it plainly has not done so.

## CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are **granted**. This action is **dismissed without prejudice**.

DONE and ORDERED this 17th day of November, 2010.

                                 s/ WILLIAM H. STEELE
                                 CHIEF UNITED STATES DISTRICT JUDGE